UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PHI GROUP, INC. | CIVIL ACTION NO. 6:21-cv-00883 |
| VERSUS | JUDGE SUMMERHAYS |
| ZURICH AMERICAN INSURANCE COMPANY | MAGISTRATE JUDGE HANNA |

**REPORT AND RECOMMENDATION**

Before the court is defendant Zurich American Insurance Company's Rule 12(b)(6) motion to dismiss. (Rec. Doc. 7). The motion is opposed and has been fully briefed by the parties. The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, this Court recommends that the motion should be granted.

**Factual Background**

This lawsuit arises out of the COVID-19 pandemic and Louisiana Governor John Bel Edwards's response to the pandemic. Governor Edwards, like many other government leaders, issued a series of executive orders directing all but essential workers to stay home as the pandemic raged.[1] The stay-home orders prompted a

---

[1] See Rec. Doc. 7-3 (Proclamation Number 33 JBE 2020).

wave of litigation by business owners seeking compensation from their insurers for business interruption and losses caused by their customers', clients', and patients' inability to conduct business. This is one such suit.

The plaintiff in this lawsuit is PHI Group, Inc. PHI "offers flight operations for numerous business sectors, including the offshore oil and gas, air medical, and technical services industries."[2] In this lawsuit, PHI seeks coverage under Policy No. PPR6738778-07, which was issued by defendant Zurich and covered the policy period from February 1, 2020 to February 1, 2021. PHI alleged in its complaint that it "suffered direct physical loss of and damage to covered property"[3] due to the "presence of the coronavirus and COVID-19, including but not limited to coronavirus droplets or nuclei on solid surfaces and in the air at insured property"[4] that "also directly resulted in loss of use of those insured facilities."[5] PHI also alleged that it sustained insured "Time Element" losses due to a slowdown of its business activities. PHI alleged that the direct physical loss of or damage to property caused by the coronavirus or COVID-19 "led to a significant decrease in the volume of flights carried out by PHI"[6] and subsequent "substantial losses in revenue."[7] PHI

---

[2] Rec. Doc. 1 at 3.
[3] Rec. Doc. 1 at 11.
[4] Rec. Doc. 1 at 11.
[5] Rec. Doc. 1 at 12.
[6] Rec. Doc. 1 at 13.
[7] Rec. Doc. 1 at 13.

also alleged that the policy contains no exclusions that would preclude or limit coverage for PHI's alleged losses.[8]  More particularly, PHI alleged that the policy "does not exclude any loss, damage, or cost related to or caused by pathogens, pathogenic organisms, bacteria, viruses, or disease-causing and illness-causing agents."[9]  PHI alleged that it notified Zurich of its claim on April 4, 2020,[10] that Zurich issued a reservation of rights letter on May 8, 2020,[11] and that Zurich denied coverage for PHI's claim on August 11, 2020.[12]

Zurich seeks dismissal of the suit on the grounds that its insurance policy does not provide coverage for PHI's alleged losses because those losses were not caused by a physical loss of or damage to corporeal property.  Neither the plaintiff's claims nor the defendant's defenses are novel in the post-pandemic legal environment, and this Court's resolution of the coverage issue presented here is consistent with similar cases decided in this circuit during the COVID-19 pandemic.

## Law and Analysis

### I.   The Standard for Analyzing a Rule 12(b)(6) Motion

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the

---

[8]   Rec. Doc. 1 at 6.
[9]   Rec. Doc. 1 at 18.
[10]  Rec. Doc. 1 at 18.
[11]  Rec. Doc. 1 at 18.
[12]  Rec. Doc. 1 at 19.

3

complaint because it fails to state a legally cognizable claim.[13] Such motions are viewed with disfavor and rarely granted.[14] When considering a Rule 12(b)(6) motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto,[15] accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff.[16] However, conclusory allegations and unwarranted deductions of fact are not accepted as true,[17] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[18] To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[19]

In this case, Zurich's insurance policy was referenced in PHI's complaint and a copy of the policy was attached to the motion to dismiss. Therefore, it is appropriate for this Court to consider policy provisions in resolving the motion.

## II. Analysis of an Insurance Policy under Louisiana Law

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state."[20] Therefore, in this case, Louisiana substantive

---

[13] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[14] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).
[15] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Collins v. Morgan Stanley*, 224 F.3d at 498.
[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[19] *Bell Atlantic v. Twombly*, 550 U.S. at 570.
[20] *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007).

law regarding the interpretation of insurance contracts must be applied. Under Louisiana law, insurance policies are contracts between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[21] The interpretation of a contract requires the determination of the parties' common intent.[22] "The parties' intent as reflected by the words in the policy determine the extent of coverage."[23] When the terms used in a contract are clear and explicit and do not lead to absurd consequences, no further interpretation may be made in search of the parties' intent.[24] The words used in a contract must be given their generally prevailing meanings; if the contract involves a technical matter, however, terms of art and technical terms must be given their technical meanings.[25] The provisions of the contract must be interpreted in light of each other so that each provision is given the meaning suggested by the contract as a whole.[26] "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[27] "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must

---

[21] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 06/27/03), 848 So.2d 577, 580.
[22] Louisiana Civil Code Article 2045.
[23] *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994).
[24] Louisiana Civil Code Article 2046.
[25] Louisiana Civil Code Article 2047.
[26] Louisiana Civil Code Article 2050.
[27] *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994).

5

be enforced as written."[28] But "ambiguous policy provisions are generally construed against the insurer and in favor of coverage."[29] A policy provision is ambiguous if it is susceptible to two or more reasonable interpretations.[30]

### III. Zurich's Policy Provides No Coverage for PHI's Claims

After comparing the foregoing legal precepts with the relevant provisions of Zurich's insurance policy, this Court finds that PHI cannot satisfy its burden of establishing that Zurich's insurance policy provides coverage for PHI's claims.

#### A. PHI Cannot Establish a Direct Physical Loss of or Damage to Its Property

The insurance policy's insuring agreement reads as follows:

> This Policy Insures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location . . . all subject to the terms, conditions and exclusions stated in this Policy.[31]

The policy defines the term "covered cause of loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded.[32] Thus, a direct physical loss or damage to covered property is a necessary antecedent to coverage under the policy.

The central dispute is whether PHI sustained "direct physical loss of or damage" to its property. PHI alleged in a conclusory fashion that it sustained

---

[28] *Cadwallader v. Allstate Ins. Co.*, 848 So.2d at 580.
[29] *Cadwallader v. Allstate Ins. Co.*, 848 So.2d at 580.
[30] *Cadwallader v. Allstate Ins. Co.*, 848 So.2d at 580.
[31] Rec. Doc. 7-2 at 19.
[32] Rec. Doc. 7-2 at 69.

6

property loss or damage due to the presence of the novel coronavirus that causes COVID-19 on surfaces and materials within its facilities.[33] Zurich contends, however, that PHI's allegations do not establish that its property sustained actual physical damage or loss due to the presence of the coronavirus. Several courts within the Fifth Circuit have already addressed this issue and have consistently found that the presence of the virus in a building did not cause or equate to physical damage or loss sufficient to trigger coverage under insurance policy provisions similar to those used in Zurich's policy.[34] This Court agrees with that line of cases and finds that the presence of the virus does not constitute physical loss or damage sufficient to trigger coverage. In particular, this Court agrees with the following analysis of a similar insurance policy in a lawsuit involving nearly identical claims:

> This court finds no ambiguity in the requirement that the premises suffer a physical loss or damage (regardless of whether "physical" modifies just loss), or in its implications for coverage in this matter. As the Fifth Circuit has noted, "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006). It has also observed that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Trinity Indus. Inc., v. Ins. Co. of N.*

---

[33] Rec. Doc. 1 at 9.
[34] See e.g., *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F.Supp.3d. 896, 907 (W.D. Tex. 2021); *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020); *Laser & Surgery Center of Acadiana LLC v. Ohio Casualty Insurance Co.*, No. 6:2021-CV-01236, 2021 WL 2702123, at *3 (W.D. La. June 14, 2021), report and recommendation adopted, 2021 WL 2697990 (W.D. La. June 30, 2021); *Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021); *Pierre v. Transportation Ins. Co.*, No. 6:20-CV-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021).

*Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990). To this end courts within the Fifth Circuit have required a "distinct, demonstrable, physical alteration of the property" to trigger coverage. *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020) (quoting *Hartford*, 181 F. App'x at 470). Accordingly, every district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement. *Id.*; *see also Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, ––– F. Supp. 3d. –––, 2021 WL 972878, at *5 (W.D. Tex. 2021).[35]

While PHI is correct that the virus itself is physical, there is no evidence that the mere existence of the virus results in a physical loss of or damage to property. It is common knowledge that, if left alone, the coronavirus in a building or on a surface will naturally die within hours to days and that the coronavirus can be safely eliminated with simple cleaning or sanitizing. Following the eradication of the virus through either method, no physical change to the surface or building remains thereafter. The temporary presence of the virus does not physically or permanently change property. Accordingly, the presence of the coronavirus that causes COVID-19 does not result in direct physical loss of or damage to property and does not trigger coverage under Zurich's insurance policy. Consequently, there are no facts supporting the conclusion that the policy provides coverage under the policy, and this Court finds that PHI has failed to state a claim upon which relief can be granted.

---

[35] *Lafayette Bone & Joint Clinic v. Transportation*, 2021 WL 1740466, at *3.

### B. PHI Cannot Establish a Contingent Time Element Loss

PHI alternatively alleged that the Coronavirus rendered its property "unusable, uninhabitable, unfit for intended function, dangerous, and unsafe."[36] This is a claim for business interruption coverage under the Time Element provision of Zurich's policy. The policy provides coverage for the suspension of the insured's business activities at an insured location but the suspension "must be due to direct physical loss of or damage to Property. . ." within a stated proximity.[37] Therefore, the policy's Time Element coverage is triggered – just as coverage under other parts of the policy is triggered – only when there has been a physical loss of or damage to property. As explained above, however, PHI cannot establish that a physical loss of or damage to property occurred due to the presence of the coronavirus.

PHI's allegation that the coronavirus rendered its property "unusable, uninhabitable, unfit for intended function, dangerous, and unsafe" and its concomitant claim for Time Element coverage implicates the *Chinese Drywall* line of cases.[38] This Court declines to extend the *Chinese Drywall* definition of physical loss to the presence of the Covid-19 virus. The *Chinese Drywall* opinion noted that the homeowner's policy in that case defined "property damage" to include loss of

---

[36] Rec. Doc. 1 at 9.
[37] Rec. Doc. 7-2 at 32.
[38] See *In re Chinese Manufactured Drywall Prod. Liab. Litig.,* 759 F.Supp.2d 822, 832 (E.D. La. 2010).

use of tangible property.[39] But Zurich's policy contains no such definition. The *Chinese Drywall* case also distinguished the homeowners' policies involved in that case as involving "deeply personal" interests, conceptually distinct from commercial policies, such as the Zurich policy at issue in this lawsuit.[40]

Further, although the court determined that the presence of Chinese drywall emitted dangerous sulfur gases, rendering the home useless, the nature of Chinese drywall dictates that physical loss would inevitably result from the homeowners having to gut and remediate the property.[41] The presence of the coronavirus that causes COVID-19 does not cause such damage or necessitate such remediation. Instead, as noted above, the virus will die on its own after a period of time or it can be eradicated using simple sanitation measures that do not harm the underlying physical property. Thus, this Court finds that PHI failed to allege facts supporting its conclusory contention that it sustained actual, quantifiable physical loss or damage. This failure precludes coverage under the time element provision of Zurich's policy. There are no facts supporting the conclusion that the policy provides coverage under the policy, and this Court therefore finds that PHI has failed to state a claim upon which relief can be granted.

---

[39] *In re Chinese Drywall,* 759 F.Supp.2d at 832.
[40] *In re Chinese Drywall,* 759 F.Supp.2d at 833.
[41] See, e.g., *Ross v. C. Adams Const. & Design, L.L.C.,* 10-852 (La. App. 5 Cir. 6/14/11), 70 So. 3d 949, 952.

### C. PHI Cannot Establish Coverage under the Policy's Civil or Military Authority Provision

PHI also seeks coverage under the Civil or Military Authority provision of Zurich's policy. PHI alleged in its complaint that the "presence of the coronavirus on property. . . creates an imminent threat of further damage to that property or to nearby property."[42] In its complaint, PHI also detailed governmental orders issued in response to the pandemic[43] and expressly sought coverage under the policy's special coverage for suspension of business activities necessitated by orders from civil or military authorities.[44] This Court finds, however, that PHI failed to allege a sufficient factual basis to trigger coverage under that part of Zurich's policy.

According to the Fifth Circuit, "civil authority coverage is intended to apply in situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."[45] Zurich's policy is consistent with that principle, providing coverage for loss sustained by PHI "resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of civil or military authority that prohibits access to the Location  That order must result from a civil authority's response to direct

---

[42]    Rec. Doc. 1 at 10.
[43]    Rec. Doc. 1 at 10-11.
[44]    Rec. Doc. 1 at 14.
[45]    *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 686-87 (5th Cir. 2011).

physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured. . . and located" within a specific distance from the insured's location.[46] For this coverage to apply, the civil or military order "must result from a civil authority's response to direct physical loss of or damage caused by a Covered Cause of Loss to property not owned, occupied, leased or rented by the Insured. . . ."[47] In this case, there is no coverage under this provision because, as discussed above, PHI cannot show that the coronavirus causes "direct physical loss or damage" regardless of whether coverage under the policy requires damage or loss to PHI's property or the property of someone else.

Other courts in this circuit have refused to apply civil authority endorsements in nearly identical cases because Governor Edwards's stay-home orders did not prohibit the plaintiffs from accesses their premises or because the plaintiffs could not show physical loss or damage.[48] Further, the governor's orders were not issued in response to physical loss or damage to property; they were issued to protect public health and not because of any prior property damage.[49]

---

[46] Rec. Doc. 7-2 at 39-40.
[47] Rec. Doc. 7-2 at 39-40.
[48] See, e.g., *Pierre v. Transportation Ins. Co*., 2021 WL 1709380 at *4; *Lafayette Bone & Joint Clinic v. Transportation,* 2021 WL 1740466 at *4; *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.,* No. CV 20-1470, 2021 WL 1600247, at *11 (E.D. La. Apr. 23, 2021).
[49] See *Q Clothier v. Twin City*, 2021 WL 1600247 at *11 (E.D. La. Apr. 23, 2021) ("Q Clothier has not established a nexus between damage to nearby property and the stay-at-home mandate."); *Muriel's New Orleans, LLC v. State Farm Fire & Casualty Co*., No. 20-2295, 2021 WL 1614812 at *12 (E.D. La. Apr. 26, 2021) ("the Closure Orders were preventative and lack the requisite nexus with prior property damage.").

PHI's allegations in this case do not show that its employees were prohibited from accessing its premises. PHI alleged instead that there was a decreased demand for its flights, its customers modified their flight schedules, and its flight volume decreased.[50] PHI's allegations do not establish that it was prohibited from accessing any of its operational premises due to direct physical loss to either its own property or to any neighboring property. To the contrary, PHI's allegations indicate that some use of its property was permitted throughout the pandemic although the scale of its operations was reduced in response to decreased demand for its services. Additionally, PHI cannot show that the coronavirus caused a physical loss or damage to property that might have acted as the necessary precedent to coverage under this policy part. Instead, the orders referenced in the complaint were issued in response to people becoming ill and for the purpose of stopping the spread of the virus among people. Therefore, the complaint contains no facts supporting the conclusion that the civil authority section of Zurich's insurance policy provides coverage. Consequently, this Court finds that PHI has failed to state a claim upon which relief can be granted.

---

[50] Rec. Doc. 1 at 15.

### D. Elimination of the Virus Endorsement and Revision of the Contamination Provisions

As originally drafted, the policy contained a contamination exclusion that read as follows:

> This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.
>
> \* \* \*
>
> Contamination and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provide by the Radioactive Contamination Coverage of this Policy.[51]

The policy also defined the term "contamination" to expressly include the presence of viruses but did not define the term "contaminant" as expressly including viruses. The Louisiana endorsement to the policy deleted the contamination exclusion quoted above and replaced it with the following:

> This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.
>
> \* \* \*
>
> Contamination or asbestos, and any cost due to Contamination or asbestos including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.[52]

The endorsement also deleted the policy's original definition of the word "contamination" and replaced it with this definition: "Contamination (Contaminated) – Any condition of property due to the actual presence of any

---

[51] Rec. Doc. 7-2 at 28.
[52] Rec. Doc. 7-2 at 124.

14

Contaminant(s)."[53] The endorsement deleted the policy's original definition of the word "contaminant" and replaced it with: "Contaminant(s) – Any solid, liquid, gaseous, thermal or other irritant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), other hazardous substances, Fungus or Spores."

PHI argued that the endorsement of Zurich's policy to remove the word virus from the definitions of "contaminant" and "contamination" requires the policy to be interpreted as providing coverage for loss of damage resulting from the presence of a virus. PHI's argument is specious at best.

The deletion of the word "virus" from the definitions does not mean that the policy now includes coverage for loss or damage resulting from the presence of a virus. Interpretation of the policy requires giving meaning to the words actually used in the policy without reference to any words that might formerly have been part of the policy language. More important, the endorsement changed the definitions of "contaminant" and "contamination" by broadening them, and it might be possible to interpret those words as reasonably excluding loss or damage resulting from viruses since a virus might be included in the category of irritants or hazardous substances constituting contaminants.

---

[53] Rec. Doc. 7-2 at 126.

More important, however, even as originally written, the policy excluded viral contamination that did not result from direct physical loss or damage to property. Because PHI has not established that the presence of the coronavirus caused direct physical loss or damage, PHI could not articulate a plausible claim for coverage even if the original definitions were still in the policy.

### E.  Professional Fees

PHI seeks coverage under the policy's "Professional Fees" provision, which covers "the actual costs incurred by the Insured, of reasonable fees paid to the Insured's accountants, architects, auditors, engineers, or other professionals and the cost of using the Insured's employees, for producing and certifying any details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from loss or damage payable under this Policy for which the Company has accepted liability."[54] Because PHI failed to allege facts sufficient to show that coverage is provided under any other policy provision, PHI cannot establish that it is entitled to Professional Fees coverage.

---

[54]    Rec. Doc. 7-2 at 47.

16

## F.     Bad Faith Penalties

PHI asserted a claim for bad faith penalties under La. R.S. 22:1973. This claim fails as a matter of law because PHI failed to allege facts sufficient to show that it has a "valid, underlying, substantive claim upon which insurance coverage is based."[55]

## G.     Prematurity

PHI argued that Zurich's motion was premature. This Court disagrees. Because PHI did not – and cannot – establish that the presence of the coronavirus that causes COVID-19 caused physical loss or damage to property, PHI did not state a plausible claim for insurance coverage under Zurich's policy.

## Conclusion

For the foregoing reasons, this Court recommends that Zurich American Insurance Company's motion to dismiss (Rec. Doc. 7) should be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

---

[55] *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 526 (5th Cir. 2010).

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[56]

Signed at Lafayette, Louisiana, this 18th day of October 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[56] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).